UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Estate of John C. Breslin, *through its Personal Representative Elaine Breslin*,<br><br>Plaintiff,<br><br>v.<br><br>U.S. Bank National Association,<br>Financial Credit Investment II Trust A,<br>Financial Credit Investment II Trust C,<br>Financial Credit Investment II Trust F,<br><br>Defendants. | Civil No. 23-3879 (DWF/DLM)<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

**INTRODUCTION**

This matter is before the Court on two motions to dismiss the amended complaint (Doc. No. 51), one brought by Defendant U.S. Bank National Association ("U.S. Bank" or the "Securities Intermediary") (Doc. No. 58) and one brought by Defendants Financial Credit Investment II Trust A, Financial Credit Investment II Trust C, and Financial Credit Investment II Trust F (together, the "Trust Defendants") (Doc. No. 63). Plaintiff Estate of John C. Breslin ("Plaintiff Estate") opposes both motions. (Doc. No. 72.)[1] For the

---

[1]     This matter was heard along with similar motions brought in the following cases: *Estate of Raymond Cappelli v. U.S. Bank Nat'l Ass'n, Fin. Credit Inv. II Tr. A, Fin. Credit Inv. II Tr. C, and Fin. Credit Inv. II Tr. F*, Civ. No. 23-3850; *Estate of Susan Jacobs v. U.S. Bank Nat'l Ass'n, Fin. Credit Inv. II Tr. A, Fin. Credit Inv. II Tr. C, and Fin. Credit Inv. II Tr. F*, Civ. No. 23-3877; and *Estate of Jaqueline Hopfinger v. U.S. Bank Nat'l Ass'n, Fin. Credit Inv. II Tr. A, Fin. Credit Inv. II Tr. C, and Fin. Credit Inv. II Tr. F*, Civ. No. 23-3878. Plaintiff Estates in all cases submitted an omnibus

reasons set forth below, the Court grants U.S. Bank's motion and denies Trust Defendants' motion.

## BACKGROUND

Plaintiff Estate seeks death benefit proceeds of a life insurance policy (the "Policy") that insured the life of John C. Breslin (the "Insured"). (*See* Doc. No. 51 ("Am. Compl.").) This case involves what Plaintiff Estate alleges to be a stranger-originated life insurance ("STOLI") policy.[2] (*Id.*)

On November 9, 2006, through U.S.-based entities of a Belgian bank known as KBC, the Insured created and formed two Wisconsin trusts: the John C. Breslin 2006

---

opposition to the motions to dismiss in all cases. The Court will issue a separate order in each case.

[2]  A STOLI policy is created when a stranger (*i.e.*, a group of investors) purchases a life insurance policy from an insured for a lump sum of money, after which the stranger-purchaser pays premiums and becomes the beneficiary. When an insured who sold their policy dies, the stranger-purchaser receives the death benefit. Sometimes a STOLI scheme is explained by referring to the insured as the stranger: "In a [STOLI] scheme, a speculator contrives to purchase a policy on the life of a stranger. If the stranger dies before the value of the premiums paid by the speculator exceeds the death benefit of the policy, the speculator's bet pays off." *Wells Fargo Bank, N.A. v. Estate of Malkin*, 278 A.3d 53, 56 (Del. 2022). With a STOLI policy, there is no connection between the insured and the stranger-purchaser (policyholder). STOLI policies are illegal in some states because they violate the principle of insurable interest, which requires that there be an insurable interest, or a connection, between the policyholder, the insured, and the beneficiary.

Trust Defendants deny that this case involves a STOLI policy because the Policy did not lack insurable interest at its inception. Trust Defendants submit that this case involves an insured who created a trust (benefitting a qualified family member) to own a life insurance policy and that the trust later sold the policy and rights to recover proceeds. (Doc. No. 65 at 7-8.) U.S. Bank accepts for the purposes of this motion only that the policy is a STOLI policy. (Doc. No. 75 at 7 n.1.)

Insurance Trust (the "Trust") and the John C. Breslin 2006-1 Insurance Trust (the "Sub-Trust"). (*Id.* ¶ 18.) The Trust named Sharyn Breslin as the "Investment Trustee" and DeWitt Ross & Stevens ("DeWitt Ross"), a law firm in Wisconsin, as the "Administrative Trustee." (Doc. No. 66-2 at 2; Am. Compl. ¶ 19.) The primary beneficiary of the Trust was the Insured's spouse and, the secondary beneficiaries were the Insured's children. (Doc. No. 66-2 at 2.) The beneficiary of the Sub-Trust was the Trust. (Doc. No. 66-3 at 2.) DeWitt Ross was the sole trustee for the Sub-Trust. (*Id.*; Am. Compl. ¶ 19.)

In December 2006, an application for a life insurance policy on the Insured's life was submitted to AXA Equitable Life Insurance Company ("AXA"). (Am. Compl. ¶ 23; Doc. No. 66-1.)[3] Trust Defendants contend that the Insured applied for the Policy. (Doc. No. 65 at 9.) However, while the Insured is listed as the "Proposed Insured" on the application, Plaintiff Estate alleges that the Sub-Trust, through its sole trustee DeWitt Ross, actually submitted the application. (Am. Compl. ¶ 23.) The application requested coverage of $3.65 million on the Insured's life and designated the Sub-Trust as the beneficiary and owner of the policy. (Doc. No. 66-1 at 2-3.) At the time of the application and all relevant times, including the Insured's death, the Insured resided in Colorado. The Insured also underwent a medical examination in Colorado as part of the submission to AXA. (Doc. No. 66-1 at 8.) AXA, which is a New York insurance

---

[3]   The Court properly considers these materials because they are embraced by the amended complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

3

company, issued the Policy. (Am. Compl. ¶ 24.) The Policy had an "issue date" of February 23, 2007 to the Sub-Trust. (*Id.*)

Plaintiff Estate alleges that around the same time, KBC operated through various U.S. entities, including Timber Creek Financial LLC ("Timber Creek") and Lonsdale LLC ("Lonsdale"), both of which were Wisconsin entities, to create non-recourse premium-financing schemes through which to wager on the lives of American senior citizens. (*Id.* ¶¶ 12-13.) The first premium payments on the Policy were made by Timber Creek, which was allegedly financed by a loan–Timber Creek loaned the first premium payment amounts to the Trust, and the Trust refinanced the loan with Lonsdale. (*Id.* ¶¶ 26-29.) More than two years later, the Trust surrendered its beneficial interest in the Policy to Lonsdale (in satisfaction of the loan),[4] who then allegedly sold its interests in the Policy to Estate Planning LLC (another KBC-owned entity), (*id.* ¶¶ 31, 34), and, following additional transactions, Trust Defendants purchased the interest in the Policy from a non-party in 2014 (*id.* ¶ 44).

All of the trust documents and loan agreements discussed above contain choice-of-law clauses that designate Wisconsin law. (*Id.* ¶¶ 20-21, 27, 30.) For example, the agreement that created the Trust provided that "[t]he validity, construction and effect of the provisions of this instrument in all respects shall be governed and regulated according

---

[4]  On or before this date, the Trust was required to either pay the amount due under the Lonsdale agreement—including principal, interest, and fees—or to surrender its interest in the Policy in settlement of the loan. The Trust surrendered its interest.

to and by the laws of the State of Wisconsin[,] . . . regardless of the domicile or residence of any beneficiary or Trustee." (Doc. No. 66-2 § E.14.)

The Insured died on March 17, 2023. (Am. Compl. ¶ 48.) Soon after, Plaintiff Estate alleges that the amount of the death benefits pursuant to the Policy (the "Proceeds") was paid first to U.S. Bank as the Securities Intermediary,[5] and then to Trust Defendants. (*See id.* ¶¶ 50-51.)

On December 27, 2023, Plaintiff Estate filed this lawsuit to recover the Proceeds under Wisconsin Statute Section 631.07(4) ("Section 631.07(4)") and "Wisconsin Common Law." (Doc. No. 2.) Plaintiff Estate also brought unjust enrichment and constructive trust claims. (*Id.*) Defendants moved to dismiss Plaintiff Estate's initial complaint (Doc. Nos. 35, 41), after which Plaintiff Estate filed an amended complaint. In the amended complaint, Plaintiff Estate brings two claims: "Recovery of STOLI Proceeds" under Wisconsin's insurable interest statute and Wisconsin common law (Count I); and "Recovery of Excess Insurance Proceeds under *Albrent v. Spencer*"[6] (Count II). (Am. Compl. ¶¶ 61-79.) Defendants move to dismiss Plaintiff Estate's claims in their entirety. (Doc. Nos. 58, 63.)

---

[5]   In 2009, Defendant U.S. Bank agreed to act as a securities intermediary for Estate Planning LLC. (Am. Compl. ¶ 37.) Thus, U.S. Bank acted as Securities Intermediary for the beneficial owner of the Policy, the applicable Trust Defendant. In that role, it served as the Policy's record owner and beneficiary, collected the Policy's death benefits, and paid those benefits to the beneficial owner—the Trust Defendants. (*Id.*)

[6]   *Albrent v. Spencer*, 81 N.W.2d 555 (Wis. 1957).

5

## DISCUSSION

### I.  Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).  *Porous Media Corp.*, 186 F.3d at 1079.

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.  As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

6

## II.   Trust Defendants' Motion

### A.   Choice-of-Law

The parties dispute which state's law applies to this action—Colorado's or Wisconsin's. Plaintiff Estate asserts that Wisconsin law applies to this case, and that under Wisconsin law, Plaintiff Estate has sufficiently alleged that it is equitably entitled to the Policy's Proceeds. Trust Defendants argue that Colorado law should apply to this action under Minnesota's choice-of-law provisions, and that under Colorado law, Plaintiff Estate's claim to the Proceeds fails as a matter of law.[7]

"[A] federal court sitting in diversity borrows the forum State's choice-of-law rule." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115 (2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *see also Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 65 (2013); *Highwoods Props., Inc. v. Exec. Risk Indem., Inc.*, 407 F.3d 917, 920 (8th Cir. 2005). Here, the forum state is Minnesota. The Court therefore looks to Minnesota's choice-of-law rules. *Allianz Ins. Co. of Can. v. Sanftleben*, 454 F.3d 853, 855 (8th Cir. 2006).

Before conducting a choice-of-law analysis, a court must determine that a conflict exists between the laws of the two potential forums. *See C.H. Robinson Worldwide, Inc. v. Traffic Tech, Inc.*, 60 F.4th 1144, 1149 (8th Cir. 2023); *Nodak Mut. Ins. v. Am. Fam. Mut. Ins.*, 604 N.W.2d 91, 93-94 (Minn. 2000) ("Before a choice-of-law analysis

---

[7]   U.S. Bank accepts for the purposes of this motion that Wisconsin law applies, but maintains that even under Wisconsin law, Plaintiff Estate's claims should be dismissed, at least as asserted against it as a Securities Intermediary. (Doc. No. 60 at 9 n.2.) The Court addresses U.S. Bank's arguments in Section III below.

7

can be applied, a court must determine that a conflict exists between the laws of two forums." (footnotes omitted)). "A conflict exists if the choice of one forum's law over the other will determine the outcome of the case." *Nodak Mut. Ins.*, 604 N.W.2d at 94. In Minnesota, outcome-determinative conflicts may arise where state laws require conflicting analytical frameworks. *See, e.g.*, *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 454 (Minn. Ct. App. 2001) (finding a conflict between Minnesota's law disfavoring, but allowing in certain circumstances, non-compete agreements and California law making the non-compete agreement *likely* unenforceable); *Johannessohn v. Polaris Indus. Inc.*, 450 F. Supp. 3d 931, 960-61 (D. Minn. 2020) (finding an outcome-determinative conflict where the respective states' consumer protection laws "vary considerably"; noting the laws' different standards of proof concerning causation and reliance, as well as the different scope of the laws); *Matoga v. Christopher*, No. 08-cv-2404, 2010 WL 4450545, at *1 (D. Minn. Nov. 1, 2010) (finding an outcome-determinative conflict where one state uses pure comparative negligence for recovery and the other state uses a modified comparative negligence model).

The Court, therefore, looks to both Wisconsin and Colorado law on insurable interest. The parties dispute whether Defendants have made the threshold identification of an "outcome-determinative" conflict.

        **1.    Conflicting Law**

Defendants submit that there is a key difference between Colorado law and Wisconsin law, namely, that Wisconsin law provides for the consideration of equity that does not exist under Colorado law. First, Wisconsin law prohibits the issuance of an

8

insurance policy "to a person without an insurable interest in the subject of the insurance." *See* Wis. Stat. § 631.07(1) (2024).  However, Wisconsin law does not automatically render a policy invalid for lack of an insurable interest.  Indeed, Wisconsin law explicitly provides that "[n]o insurance policy is invalid merely because the policyholder lacks insurable interest."  Section 631.07(4).  Instead, the statute provides that "a court with appropriate jurisdiction may order the proceeds [of an insurance policy] to be paid to someone other than the person to whom the policy is designated to be payable, *who is equitably entitled thereto*." *Id.* (emphasis added); *see also Disrud v. Arnold*, 482 N.W.2d 114, 117 (Wis. Ct. App. 1992) (explaining that Section 631.07(4) "calls for the trial court to fashion an equitable remedy").  The determination of whether one is equitably entitled to insurance proceeds "requires a weighing of the factors or equities that affect the judgment—a function which requires the exercise of judicial discretion." *Disrud*, 482 N.W.2d at 117 (quoting *Mulder v. Mittelstadt*, 352 N.W.2d 223, 228 (Wis. Ct. App. 1984)).

In contrast, under Colorado common law, a court looks to the party challenging the insurable interest to a policy, and in particular, a court determines whether the party challenging is the insurer.  *See Mullenax v. Nat'l Rsrv. Life Ins.*, 485 P.2d 137, 139 (Colo. Ct. App. 1971) ("The insurer may assert the lack of insurable interest on the part of the beneficiary, but another claimant to the proceeds may not raise the issue.").  Here, Plaintiff Estate is not the insurer and the insurer is not challenging the insurable interest to the Policy.  Thus, under this common law rule, Plaintiff Estate does not have standing

9

to assert an insurable interest challenge.[8]  In addition, Colorado law does not otherwise provide for any equitable consideration in this case.

Here, there are material conflicts between the analytical frameworks under Wisconsin and Colorado law.  And the application of these different frameworks could, under the facts of this case, create conflicting results.  The Court therefore conducts a choice-of-law analysis.

### 2. Choice-of-Law Analysis

If an actual conflict between the states' laws exists, the Court "must ensure that each state has significant contacts with the case so that its laws can be constitutionally applied."  *Smith v. Stonebridge Life Ins.*, No. 03-cv-1006, 2003 WL 21909567, at *3 (D. Minn. Aug. 8, 2003); *see also Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 469 (Minn. 1994); *Greenstate Credit Union v. Hy-Vee, Inc.*, 549 F. Supp. 3d 969, 974 (D. Minn. 2021).  That is, for a state's laws to apply, "that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair."  *Jepson*, 513 N.W.2d at 469 (citation omitted).  Here, based on the facts outlined above, the Court finds that both

---

[8]   In 2011, the Colorado legislature enacted a statute governing insurable interests for life insurance policies.  Colo. Rev. Stat. § 10-7-709 (effective May 27, 2011).  This statute provides:  "If the beneficiary, assignee, or other payee received the death benefits under a life insurance policy procured or effected in violation of [the Insurable interest] article, the personal representative of the insured's estate . . . may maintain an action to recover the death benefits from the person receiving them."  (*Id.*)  This statute, however, is not retroactive and only applies to insurance policies "written on or after the effective date of this act."  S.B. 11-182, 68th Gen. Assemb. First Reg. Sess. (Colo. 2011).  Because the relevant Policy here was issued in 2007, this statute does not apply.

Colorado and Wisconsin have sufficient contacts to the facts of this case. Accordingly, the Court can apply either state's law in a manner that would not be fundamentally unfair or arbitrary.

The Court next considers five "choice influencing factors" to determine whether Wisconsin or Colorado law should apply: "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." *Id.* at 470 (citing *Milkovich v. Saari*, 203 N.W.2d 408, 412 (Minn. 1973)).[9]

### a. Predictability of Result

"Predictability of results applies primarily to consensual transactions where the parties desire advance notice of which state law will govern in future disputes." *Myers v. Gov't Emps. Ins.*, 225 N.W.2d 238, 242 (Minn. 1974). "The objective of the predictability factor is to fulfill the parties' justified expectations." *Lommen v. City of East Grand Forks*, 522 N.W.2d 148, 150 (Minn. Ct. App. 1994). Here, Trust Defendants stress that the Insured, at all relevant times, resided in Colorado. Plaintiff Estate focuses on the transactions that led to the Policy. While the Insured was from Colorado, the Policy involved Wisconsin entities and transactions. The investors who set up the

---

[9] Plaintiff Estate argues that the Court should not engage in the fact-intensive choice-of-law test at the pleading stage. The Court disagrees. Plaintiff Estate has not pointed to any significant factual disputes or any absence of a material fact regarding the foreseeability of the applicable law. The Court is able to fairly conduct a conflict-of-law analysis based on the facts at this stage in the litigation. *See, e.g., Greenstate Credit Union*, 549 F. Supp. 3d at 974 (concluding that the court had sufficient information to make a choice of law determination on a motion to dismiss because the factual record detailed where relevant conduct occurred).

Wisconsin Sub-Trust that applied for and owned the Policy, and the trustee of the Sub-Trust (DeWitt Ross), are Wisconsin entities.  Further, the Policy was issued and delivered to the Wisconsin Sub-Trust.  Moreover, the Insured executed various trust and loan documents that contain Wisconsin choice-of-law clauses.

The Court finds that the predictability-of-results factor weighs in favor of applying Wisconsin law.  During the time period that the transactions relevant to this case occurred—namely when the Policy was applied for, originated, and initially sold—it was predictable to all involved that Wisconsin law would apply.  While the Insured is a Colorado resident, the Court finds that fact to carry less weight here because, unlike more typical life insurance cases, this case involves investors situated in a state that is different from the Insured's state of residence.  *See, e.g.*, *Lincoln Nat'l Life Ins. v. Ret. Value LLC*, No. 21-cv-20438, 2022 WL 17554986, at *4 n.5 (D.N.J. Dec. 9, 2022) (unpublished) (concluding that New Jersey law governed policy insuring a New York resident where the policy was issued and delivered to a New Jersey trust, explaining that in the STOLI context, the insured's domicile "becomes increasingly irrelevant").

### b.     Interstate Order

The maintenance-of-interstate-order factor concerns whether the application of one state's law would manifest disrespect for another's sovereignty or "impede the interstate movement of people and goods." *Jepson*, 513 N.W.2d at 471.  "[M]aintenance of interstate order is generally satisfied as long as the state whose laws are purportedly in conflict has sufficient contacts with and interest in the facts and issues being litigated." *Myers*, 225 N.W.2d at 242.  The primary focus is on the contacts that each competing

state has with the dispute. *See Johnson v. Parrish Tire Co.*, No. 06-cv-2267, 2009 WL 10677525, at *5 (D. Minn. Mar. 30, 2009) ("[M]aintenance of interstate order weighs in favor of the state that has the most significant contacts with the facts relevant to the litigation.").

Here, while the Insured was a Colorado resident at all relevant times, the Court finds that, for the reasons discussed above, Wisconsin has the most significant contacts with the facts of this litigation. Therefore, this factor weighs in favor of the application of Wisconsin law.

### c. Judicial Task

The simplification-of-the-judicial-task "factor concerns the forum court's ability to discern and apply the law of another state as compared to its own law." *Lommen*, 522 N.W.2d at 152. The Court finds that this factor is neutral as the Court is able to apply the law of either Colorado or Wisconsin. *See Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001) ("A federal district court is faced almost daily with the task of applying some state's law other than that of the forum state, and it is equally capable of resolving [a] dispute under [any state's] law.").

### d. Governmental Interest

The Court next considers the governmental-interest factor. This factor asks "which choice of law most advances a significant interest of the forum." *Nodak Mut. Ins.*, 604 N.W.2d at 95 (citation omitted). Here, Colorado certainly has an interest in providing a forum to adjudicate the rights of its citizen—Plaintiff Estate is a Colorado resident alleging that it was harmed from the creation of a life insurance policy for the

13

Insured. Even so, the Court concludes that Wisconsin has a stronger policy interest in applying its law to this action. The central issue in this case is whether the Policy was procured without a valid insurable interest and whether Plaintiff Estate is entitled to the Proceeds. Indeed, Wisconsin law explicitly provides that its laws on insurance contracts (including Section 631.07(4)) "apply to all insurance policies and group certificates delivered or issued for delivery in [the] state." Wis. Stat. § 631.01(1) (2024). Again, all of the relevant transactions related to the creation and procurement of the Policy occurred in Wisconsin, the Wisconsin Trust was controlled by Wisconsin investors, and the Trust in turn procured, owned, and took delivery of the Policy. This factor weighs in favor of applying Wisconsin law.

### e. Better Rule of Law

The fifth factor, the "better rule of law," need not be considered when the choice-of-law question can be resolved using the other four factors. *Nesladek v. Ford Motor Co.*, 876 F. Supp. 1061, 1070 (D. Minn. 1994), *aff'd*, 46 F.3d 734 (8th Cir. 1995). Because the Court can resolve the choice-of-law question based on the consideration of the four factors above, the Court need not consider this factor. Even so, the Court does find that Wisconsin law is the "better rule of law" simply because it provides for the consideration of equity in cases involved in STOLI schemes. This consideration is in line with "[v]irtually all jurisdictions . . . [that] prohibit third parties from creating life insurance policies for the benefit of those who have no relationship [with] the insured." *See PHL Variable Ins. v. Price Dawe 2006 Ins. Tr. ex rel Christiana Bank & Tr. Co.*, 28 A.3d 1059, 1070 (Del. 2011).

Based on consideration of all relevant factors, the Court concludes that Minnesota's choice-of-law principles favor applying Wisconsin law to resolve this matter.

### B. Plaintiff Estate's Claims Under Wisconsin Law

Trust Defendants argue that, even if Wisconsin law applies, Plaintiff Estate's claims fail because its claims are untimely and because Plaintiff Estate has not pled facts that would demonstrate an equitable entitlement to the Policy Proceeds. Trust Defendants also point out that Plaintiff Estate did not respond to the statute of limitations issue in its brief. At oral argument, Plaintiff Estate responded by arguing that under Wisconsin law, the statute of limitations does not apply to equitable causes of action, and, in any event, the statute invoked by Trust Defendants was amended and a six-year limitations period would apply here. Plaintiff Estate also argues that the issue should be considered at a later stage, as there remain relevant factual questions. Considering the early stage of this litigation and the incomplete treatment of any statute of limitations issue, the Court declines to consider it at this time and instead will allow the parties to address the issue more fully after discovery.

As discussed above, Wisconsin law explicitly provides that "[n]o insurance policy is invalid merely because the policyholder lacks insurable interest" but instead provides that "a court with appropriate jurisdiction may order the proceeds [of an insurance policy] to be paid to someone other than the person to whom the policy is designated to be payable, *who is equitably entitled thereto*." Section 631.07(4) (emphasis added); *see also Disrud*, 482 N.W.2d at 117 (explaining that Section 631.07(4) "calls for the trial court to

15

fashion an equitable remedy"). The determination of whether one is equitably entitled to insurance proceeds "requires a weighing of the factors or equities" in determining whether the policy proceeds should be paid to "someone other than the person to whom the policy is designated to be payable." *Disrud*, 482 N.W.2d at 117 (first quoting *Mulder*, 352 N.W.2d at 228; and then quoting Section 631.07(4)). Plaintiff Estate has pleaded that a STOLI policy was taken out on the life of the Insured and that Trust Defendants received the Proceeds. The parties dispute whether these facts alone demonstrate that Plaintiff Estate is equitably entitled to the Proceeds, or whether Plaintiff Estate must establish something more. Even accepting that more must be shown, Plaintiff Estate argues that discovery will provide that additional showing. For example, Plaintiff Estate argues that discovery will show that the investors and insurance agents involved in the procurement of the Policy drove the scheme, chose the details of the Policy, and completed the application forms. In addition, Plaintiff Estate asserts that discovery is likely to confirm that Trust Defendants knew, or had reason to believe, that the Policy was an illegal STOLI policy, but decided to buy it anyway.

The Court concludes that Plaintiff Estate has sufficiently pleaded a cause of action under Section 631.07(4). The issue of whether or not Plaintiff Estate can make that showing by merely demonstrating that a STOLI policy was taken out on the life of the Insured and that Trust Defendants received the Proceeds of the Policy, or whether Plaintiff Estate must show additional equitable considerations, will be taken up at the

summary judgment stage. For now, Plaintiff Estate's claims under Wisconsin law survive Trust Defendants' motion to dismiss.[10]

### III. U.S. Bank's Motion

U.S. Bank argues that Plaintiff Estate fails to state a claim against it as a Securities Intermediary for three reasons: (1) as the Securities Intermediary, it is not a proper party to this case; (2) Plaintiff Estate fails to state a claim under Section 631.07(4); and (3) Plaintiff Estate's alternative relief is properly denied because it is premised on common law that has been superseded by statute and, separately, because U.S. Bank does not have the Proceeds.

As discussed above, Wisconsin law prohibits insurers from issuing policies lacking an insurable interest, but also provides that such policies remain valid ("[n]o insurance policy is invalid merely because the policyholder lacks an insurable interest") unless and until a court orders the proceeds to be paid to someone other than to whom the policy is designated to be payable after weighing "the factors or equities that affect the judgment." Section 631.07(4); *Disrud*, 482 N.W.2d at 117 (quoting *Mulder*, 352 N.W.2d at 228. In addition, Wisconsin law, which adopted Section 8-115 of the UCC, provides:

> A securities intermediary that has transferred a financial asset pursuant to an effective entitlement order . . . is not liable to a person having an adverse claim to the financial asset, unless the securities intermediary . . . :
>
> (1) Took the action after it had been served with an injunction . . . ; or

---

[10] The Court also determines that the viability of Plaintiff Estate's claim under Count II will be appropriately considered at the summary judgment stage.

17

> (2) Acted in collusion with the wrongdoer in violating the rights of the adverse claimant; or
>
> (3) In the case of a security certificate that has been stolen, acted with notice of the adverse claim.

Wis. Stat. § 408.115 (2024) ("Section 408.115").

A securities intermediary is a corporation or "person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity." *Id.* § 408.102(1)(n). A financial asset includes: "[a]ny property that is held by a securities intermediary for another person in a securities account if the securities intermediary has expressly agreed with the other person that the property is to be treated as a financial asset under the chapter." *Id.* § 408.102(1)(i)(1)(c). And an "adverse claim" is "a claim that a claimant has a property interest in a financial asset and that it is a violation of the rights of the claimant for another person to hold, transfer or deal with the financial asset." *Id.* § 408.102(1)(a).

U.S. Bank is a securities intermediary. The Proceeds at issue in this case are a "financial asset," and U.S. Bank held the Proceeds for Trust Defendants. In addition, Plaintiff Estate asserts an "adverse claim" to the Proceeds by arguing that allowing the Trust Defendants to retain the Policy Proceeds would violate its equitable entitlement to those Proceeds under Section 631.07(4). Plaintiff Estate has not alleged facts that would satisfy any of the three exceptions to Section 408.115. In particular, Plaintiff Estate has not alleged facts sufficient to show the existence of a court order or injunction, any act of collusion, or the existence of a stolen security certificate.

Indeed, Plaintiff Estate has not alleged any facts that would show that U.S. Bank as Securities Intermediary performed any function beyond a limited, ministerial role. Accordingly, all claims against U.S. Bank are properly dismissed.[11]

## CONCLUSION

For the reasons discussed above, the Court grants U.S. Bank's motion to dismiss. Therefore, all claims against U.S. Bank will be dismissed with prejudice. However, at this stage of the litigation, the Court denies Trust Defendants' motion to dismiss Plaintiff Estate's claims. The Court cautions the parties, however, that victory at this stage does not necessarily mean victory on summary judgment. The Court encourages the parties to attempt to resolve this matter with or without the assistance of the Magistrate Judge.

## ORDER

Based upon the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

1. Defendant U.S. Bank's Motion to Dismiss (Doc. No. [58]) is **GRANTED**.
2. Trust Defendants' Motion to Dismiss (Doc. No. [63]) is **DENIED**.

---

[11] Additionally, there is no dispute that U.S. Bank, as the Securities Intermediary, paid the Proceeds to Trust Defendants, the beneficial owners. (Am. Compl. ¶ 2.) Therefore, U.S. Bank does not have the Proceeds and, therefore, could not be ordered to pay the Proceeds to someone equitably entitled under Section 631.07(4).

3.  Plaintiff Estate's claims in the Amended Complaint (Doc. No. [51]) are **DISMISSED WITH PREJUDICE** only insofar as they are asserted against U.S. Bank.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 3, 2025            s/Donovan W. Frank
                                DONOVAN W. FRANK
                                United States District Judge